**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND (NORTHERN DIVISION)**

| | | |
|---|---|---|
| TECH USA, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No.:_____ |
| | ) | |
| THOMAS A. CASSIDY and | ) | |
| | ) | |
| NUCLEUS SOLUTIONS GROUP, LLC, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

NOW COMES the Plaintiff TECH USA, LLC ("TECH USA" or "Plaintiff") by and through its attorneys Allan P. Hillman of Kern & Hillman, LLC and Grover C. Outland, III, General Counsel, TECH USA, and sues Defendants Thomas A. Cassidy ("Mr. Cassidy") and Nucleus Solutions Group, LLC ("NSG") (Mr. Cassidy and NSG being collectively referred to hereinafter as "Defendants" and, singly, as "Defendant").  TECH USA sues Defendant Mr. Cassidy for statutory trade secret misappropriation, breach of contract (confidential information), and tortious interference with the contract between Plaintiff TECH USA and its customer; and sues Defendant NSG for statutory trade secret misappropriation, tortious interference with the contract between Plaintiff TECH USA and its former employee Defendant Mr. Cassidy, and tortious interference with the contract between Plaintiff TECH USA and its customer.

This action does not relate to any breach of any customer non-solicitation covenants by Defendant Mr. Cassidy, who resigned his TECH USA employment in 2013, because the temporal restriction period (12 months) on such non-solicitation has expired; rather this case

1

focuses on Defendant Mr. Cassidy's blatant wrongful exploitation of trade secrets and confidential information he received, while a TECH USA employee, to driver a wedge between TECH USA and one of its customers for the benefit solely of himself and his new company/employer Defendant Nucleus Solutions Group, LLC, of which he and TECH USA's former president Jason R. Beck ("Mr. Beck") are, on information and belief, the two LLC managers.

## THE PARTIES,

### TECH USA

1.      Plaintiff TECH USA, LLC is a Maryland limited liability company with its principal place of business at 8334 Veterans Highway, Millersville, MD 21108.    Each of Plaintiff TECH USA's members is a citizen of Maryland; consequently, Plaintiff is a citizen of Maryland.

2.      TECH USA is a mid-size competitor in the nationwide and worldwide market for providing customized staffing, consulting, and solutions to commercial and government customers.  In TECH USA's industry ("Staffing Industry"), the terms "staffing", "consulting" and "solutions" are synonymous.  Plaintiff started its business in a single 1,000 square foot office in Millersville, Maryland in early 1998, and has, in the past seventeen (17) years, grown to 12 offices in 11 states.   TECH USA has expertise particularly in the areas of engineering, information technology, infrastructure/telecommunications, aerospace and government services, and scientific and professional services.   Its competitors in the Staffing Industry include companies ranging from those with revenues of many hundreds of millions of dollars (or more) to more modest firms, such as Defendant NSG.  Plaintiff TECH USA develops close working

relationships with its corporate and non-corporate customers in order better to understand and service their personnel and hiring needs, and, furthermore, extensively trains and develops close working relationships with its internal and external (contract) employees in order more completely and professionally to meet TECH USA's customers' personnel requirements and hiring needs.  In the course of developing those close customer relationships, TECH USA and its sales representatives develop, retain, and safeguard as trade secrets such sensitive and non-public information as the pricing margins/tolerances of TECH USA's customers.  If, and to the extent that, such sensitive and non-public information does not meet the definition of a "trade secret" under the Maryland Uniform Trade Secrets Act ("MUTSA"), it is protected indefinitely as "Confidential Information" in the Confidentiality/Non-Competition Agreements that current and former TECH USA employees, such as Defendant Mr. Cassidy, sign.

## DEFENDANT MR. CASSIDY

3.      Defendant Mr. Cassidy is an individual and a citizen of Florida.  He carries on a regular business, is employed, or habitually engages in a vocation in Tampa.  On information and belief, Mr. Cassidy resides at 308 S. Gomez Avenue, Apartment A, Tampa, FL  33609.

## DEFENDANT NSG

4.      Defendant Nucleus Solutions Group, LLC is a limited liability company formed under the laws of the State of Florida on January 12, 2015.  On information and belief, Defendant NSG carries on a regular business and maintains an office at 1511 North Westshore Blvd, Suite 220, Tampa, FL  33607, and, pursuant to the Florida Department of State Division of

Corporations "Detail by Entity Name," its two managers are Defendant Mr. Cassidy and Mr. Beck.

## JURISDICTION AND VENUE

5.        This Court has jurisdiction under all Counts of this Complaint pursuant to 28 U.S.C. §1332, because the parties are of diverse citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Jurisdiction and venue are proper in this judicial district because Defendant Mr. Cassidy expressly agreed in paragraph 7, on page 4 of his January 22, 2010 Confidentiality/Non-Competition Agreement Employment Agreement (the "Employment Agreement"), together with Plaintiff TECH USA, that the parties:

> "hereby both irrevocably consent in the event of any and all grievances, disputes, controversies, causes of action, and any and all claims of any nature whatsoever, whether arising in contract, under statute, in tort, or otherwise between you and [TECH USA] (collectively "Claims"), in any action brought by [Plaintiff] in connection with [any claims for misappropriation of trade secrets and/or breach of contract relating to Confidential Information], to the jurisdiction of any federal or state court within the State of Maryland, and [Defendant] irrevocably waive[s] all questions, issues, and defenses as to personal jurisdiction and venue for the purpose of carrying out this provision."  BOTH PARTIES HEREBY WAIVE ANY TRIAL BY JURY.

(A true and correct copy of the Employment Agreement is attached in **Exhibit A** hereto.)  This action (in particular Counts I and II) is based on, and brought in connection with Defendant Mr. Cassidy's misappropriation of statutory trade secrets and breach of contract (as to Employment Agreement paragraph 1: Confidential Information).  (Exhibit A, supra.)  Venue is proper pursuant to 28 U.S.C. 1391, as well as MD. CODE ANN., CTS. & JUD. PROC., § 6-202(3) and (11).  Furthermore, venue is proper in this judicial district because, as quoted above, Defendant Mr. Cassidy agreed in the above-quoted provisions of paragraph 7 of the Employment

Agreement that he "waive[s] all questions, issues, and defenses as to personal jurisdiction and venue for the purpose of carrying out this provision."

## THE CONTROVERSY

6. As set forth below, paragraph 1 of the Employment Agreement protects TECH USA's trade secrets and Confidential Information (defined therein as "Confidential Information"), and the terms "you" and "your" throughout paragraph 1 refers to Defendant Mr. Cassidy:

> 1. <u>Confidential Information/Trade Secrets</u> - During your employment by the Company and, **after your termination, whether by you or the Company with or without cause** (collectively "Termination of Employment"), **you agree that you shall not use for your own benefit, or the benefit of any third party, or disclose or divulge to any third party, any Confidential Information (as defined below) or Trade Secrets, as defined in the Maryland Uniform Trade Secrets Act ("MUTSA")**. Confidential Information shall mean any and all information (the selection, arrangement, and compilation of which is not generally known by the TECH USA Companies' competitors or the general public) concerning any of the TECH USA Companies, including, but not limited to: (a) its/their financial affairs, sales, and marketing strategies; business and marketing plans, profit margins **and pricing policies** and practices, sales and marketing techniques; financial data and plans history and data forecasts; fee schedules, orientation guides, commission and/or bonus plans; personnel information including without limitation compensation structures, qualifications, and hiring practices, personnel training techniques and materials; product manuals, training manuals, presentations, and materials (whether provided at conferences, meetings, over the Internet, or using other means of communication/transmission; inventions, processes and compilations of information; records and specifications, computer database, programs and software; acquisition plans; **pricing and costs**; (b) any of the following information about corporations, companies or other entities, including, without limitation, their end-clients (collectively "Customers") for which the TECH USA Companies (or one or more of them) employs, recruits, supplies, or otherwise finds or arranges employees: any lists or other compilations of Customers; such Customer(s)' names, addresses, and direct-dial, mobile, and other telephone numbers; hiring managers' or other contact persons' names, email addresses and direct-dial, mobile, and other telephone numbers; staffing

requirements, personnel needs, **pricing sensitivities or preferences; margin tolerances regarding pricing**; and any other information concerning or relating to any future or ongoing requirements for services of Customer(s) that you are or have been providing services to on behalf of the Company, as well as the requirements of any other customers, individuals or entities that you have been introduced to or have otherwise gained information about, either directly or indirectly, as a result of your employment with any of the TECH USA Companies (c) any of the information described in subsection (b) above regarding prospective Customers of the TECH USA Companies; and (d) the names, addresses, telephone numbers (including but not limited to direct-dial , mobile, and other telephone numbers), email addresses, skill sets, availability and wage rates of any contract employees and/or any other personnel the TECH USA Companies (or one or more of them) employs, recruits, supplies, or otherwise finds or arranges for its Customers. All of the above Confidential Information described or encompassed in the preceding sentence also constitutes Trade Secrets, together with anything else that is defined as a Trade Secret under the MUTSA.  You further agree that all Confidential Information and Trade Secrets provided to you (or otherwise accessed or received by you) during your employment are the exclusive property of the Company and/or its customers.  No Confidential Information or Trade Secrets (or copies, summaries or compilations of any kind) will be removed from the Company's premises or the premises of the Company's customers under any circumstances without prior consent of the Company.  By your signature below, you ACKNOWLEDGE that the Confidential Information and Trade Secrets are NOT generally known and that they would be difficult to ascertain without the substantial effort and expense that the Company has devoted, and you ACKNOWLEDGE further that such Confidential Information and Trade Secrets would be of significant value to competitors of the TECH USA Companies (or of any one or more of them).  Any failure to designate particular information as Confidential Information and/or as a Trade Secret shall not preclude any later claim by the Company that such information constitutes Confidential Information and/or as a Trade Secret. (Emphasis added.)

7.      Plaintiff's Managing Directors (who are also in sales) and outside salespersons (known as "Account Executives," Mr. Cassidy's final job title at TECH USA, or "Business

Development Managers"), as well as Plaintiff's inside salespersons (beginning with entry-level "Recruiters" ), all sign their own "Confidentiality/Non-Competition Agreement" with Plaintiff in order to protect Plaintiff's interests in its business relationships with TECH USA customers and contract employees (or candidates) that Plaintiff assigns/refers to its customers, and also to protect Plaintiff's Confidential Information, Trade Secrets, and Company Property that are made available to TECH USA employees in order for them successfully to secure, service, and retain customers for TECH USA.

8.      Plaintiff's Chairman and CEO Mr. Howell risked a substantial part of his life savings in the start-up of TECH USA.  Mr. Howell knows from personal experience that obtaining a customer and then holding onto that customer in today's highly competitive marketplace is a very difficult, time-consuming and investment-intensive process, especially in the Staffing Industry in which Plaintiff TECH USA competes.

9.      From each of its offices, TECH USA expends a large amount of money, time, and other resources on its salespeople, training them to research their territory and to find and acquire customers and develop customer relationships.  Plaintiff also makes major investments in national sales training conferences which Defendant Mr. Cassidy and all, or almost all, of TECH USA's Managing Directors, account executives, and/or recruiters attend, as did Mr. Beck (when he was president of TECH USA between 2005-2012) and other TECH USA executives.  For even a well-trained salesperson, obtaining a new customer can take anywhere from six (6) to twenty-four (24) months from initial "cold call" or introduction/referral, to obtaining various meetings, to placing the first contract employee on assignment there with the customer (or providing a new employee for direct placement with the customer).  Naturally, if a former account executive such as Defendant Mr. Cassidy is willing to violate the law on Trade Secrets

(i.e. MUTSA) and breach his contractual obligations regarding Confidential Information, then the time and process of stealing a customer from TECH USA can be radically shortened.

10.     In training its staffing salespeople and recruiters, TECH USA provides them with Confidential Information and Trade Secrets that TECH USA has developed over its 17-year history, affording the salespersons such as Defendant Mr. Cassidy access to specific data on existing customers and prospective customers, including but not limited to non-public contact information for those customers' hiring managers, as well as methods, techniques, and tools to price (e.g. margin multipliers and pricing tolerances) Plaintiff's services and expand its business/servicing footprint within the customer's organization, in order to grow TECH USA's offerings/services from finding personnel for one business unit or department (e.g. Engineering) within a customer to several units or departments with the customer's organization (e.g. IT, Infrastructure-Telecommunications, etc.).  Confidential Information and Trade Secrets that current and former TECH USA salespeople, including the Defendant Mr. Cassidy, receive (or in the case of a former employee, received) in order to perform their jobs include corporate and other customer names, street addresses, telephone numbers, hiring manager contact information (including, without limitation, hiring manager direct dial phone number and email address), pricing margins/multipliers/tolerances of customers used in past transactions, customer preferences on preferred staffing solutions -- whether they utilize contract assignments, direct/permanent placements, "temp to perm" (otherwise known as "contract to hire") arrangements, or other staffing solutions -- in securing new personnel.

11.     All of the Confidential Information and Trade Secrets described in the preceding paragraph constitutes information that TECH USA has developed over many years with substantial effort and experience; Plaintiff has safeguarded that Confidential Information and

those Trade Secrets -- it was not and has not been public information, nor was it (or has it been) readily available to Plaintiff's competitors.  In fact, the Confidential Information and Trade Secrets would be very valuable to TECH USA's competitors (such as Defendant NSG, Defendant Mr. Cassidy, and Mr. Beck), and it would take them substantial time and expense to ascertain it.  While an element or two of the above Confidential Information and Trade Secrets may be ascertainable outside of TECH USA's business (such as the customer's corporate name and a switchboard or other listed phone number), it is the combination of all of the elements, especially hiring manager contact information, including hiring managers' and other contact persons' email addresses and direct dial phone numbers, customer pricing margins/multipliers/tolerances, and customer preferences on preferred staffing solutions, together with the identity, skillsets, salary levels, and contact information of the TECH USA employees providing those solutions, that prove extremely valuable, indeed indispensable to TECH USA's (and to any competitor's) business.  That information as a whole is not known outside of Plaintiff's business.

12.     Only those current and former employees of Plaintiff now or formerly involved in recruiting, sales (such as Defendant Mr. Cassidy), and sales management, know the above Confidential Information and Trade Secrets, and TECH USA safeguards it by taking such measures as (i) requiring that recruiting, sales, and sales management employees of Plaintiff who need access to Confidential Information and Trade Secrets (in order to service TECH USA customers and accounts) sign Plaintiff's form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects those Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the above Confidential Information and Trade Secrets to third parties outside of

TECH USA, and (iii) not posting Plaintiff's customer names or other customer information (or Plaintiff employee names or other Plaintiff employee information) on the TECH USA website; rather, the TECH USA Confidential Information and Trade Secrets are provided only to those management, sales and recruiting employees (who comprise a small percentage of Plaintiff's total employee roster) having a "need to know."  Access to the current TECH USA database that came into use in 2006 is via unique user name and password only, both of which are inactivated when an employee leaves the company.  The above Confidential Information and Trade Secrets are extremely valuable to TECH USA and its competitors because, armed with that Information and those Secrets, a competing staffing firm or former employee of Plaintiff could initiate a business relationship with Customers of TECH USA and steal business from Plaintiff, just as Defendants have so blatantly attempted to do in the current case.  Without limiting the generality of the foregoing, Defendant Mr. Cassidy is wrongfully using, for his and the other Defendant NSG's own benefit, TECH USA's Confidential Information and Trade Secrets in order to steal business from TECH USA,  all in violation of the terms of Defendant Mr. Cassidy's Confidentiality/Non-Competition Agreement with Plaintiff.

13.     Plaintiff has recently learned that, late last month, about two years after his resignation from TECH USA, Defendant Mr. Cassidy, together with TECH USA's former president Mr. Beck, formed and became the two managers of a limited liability company ("LLC") known as Nucleus Solutions Groups, LLC, which the Florida Department of State (Division of Corporations) records (attached hereto as **Exhibit B**) recite was formed on January 12, 2015.  On May 27, 2015 at 5:00 p.m., Defendant Mr. Cassidy, on his own behalf and on behalf of Defendant NSG, wrote an email to a manager of one of Plaintiff TECH USA's customers, identifying certain "multiplier" rates of TECH USA, reflecting the pricing and margin

tolerance of that TECH USA customer as compared to another TECH USA customer (attached hereto as **Exhibit C**) and promising to undercut TECH USA's trade-secret multiplier rates (i.e. pricing margins) in Defendant Mr. Cassidy's and Defendant NSG's dealings with the TECH USA customer, all in express violation of paragraph 1 of Defendant's Mr. Cassidy's Employment Agreement (see bolded portions in block quote in paragraph 6 of this Complaint) due to the sensitive and proprietary nature of the Trade Secrets and/or Confidential Information contained in Exhibit C. In order to protect its Trade Secrets and Confidential Information from public disclosure, Plaintiff has redacted from Exhibit C the actual "multiplier" numerals, the two TECH USA customer names, and the last name of the TECH USA customer representative to whom Defendant Mr. Cassidy sent the May 27, 2015, 5:00 p.m. email.

14.     As described above, Plaintiff expends months of effort and much money, e.g. salaries of TECH USA management, recruiting, and sales employees (including well into the six figures of dollars expended on Defendant Mr. Cassidy's compensation over approximately six years with TECH USA, on his sales development efforts, time and expenditures on meetings with customer representatives, and the like) in developing and enhancing the Confidential Information and Trade Secrets.  Properly acquiring or duplicating the above Confidential Information and Trade Secrets, as a whole, would be very difficult to accomplish because such Information and/or Secrets are not located in one publicly accessible database.  It has been developed over many months and years of numerous cold calls and meetings, and includes, as well, Plaintiff's detailed experience in actual transactions with the customer(s) in order to determine pricing margins and customer preferences on staffing solutions provided.

15.     Paragraph 8 of the Employment Agreement that Defendant Mr. Cassidy signed with Plaintiff provides for American Arbitration Associate ("AAA") mediation proceedings and,

before that, negotiations between the parties regarding their disputes.  However, those mediation and negotiation provisions do not apply where legal actions (such as the one in this action) have been filed as described in paragraph 5 of the Employment Agreement.

16.     In Employment Agreement paragraph 5's first sentence, any breach by Defendant Mr. Cassidy of any of paragraphs 1-4 of the Employment Agreement (which includes, without limitation, breach of paragraph 1 on Confidential Information) "will cause" Plaintiff TECH USA "immediate irreparable harm [such] that no remedy at law would be adequate to compensate [Plaintiff] in any such event."   The second and third sentences of Employment Agreement paragraph 5 provide as follows:

> [Defendant Mr. Cassidy] acknowledge[s] and agree[s] that [he] have or will receive from [Plaintiff] instruction, training, and valuable information (including, but not limited to, Confidential Information and Trade Secrets) and that the services [he] render[s] are of a special character having unique value to [Plaintiff TECH USA], the loss of which to [Plaintiff] will be not readily calculable, and in any event, irreparable.  Accordingly, [he] agree[s] that, in the event of any such breach by [Defendant Mr. Cassidy], [Plaintiff] shall have the right to proceed directly to any state or federal court in Maryland under the usual equity rules in order to obtain injunctive relief, including, without limitation, temporary restraining orders, preliminary injunctions, and permanent injunctions against such breach (threatened or otherwise).

17.     During late May 2015, Plaintiff TECH USA learned of Defendant Mr. Cassidy's violations of MUTSA (by, among other things, misappropriating Trade Secrets) and breaches of the terms of the Employment Agreement paragraph 1 and other legal violations. This suit followed promptly.

## COUNT I

### Statutory Trade Secret Misappropriation – Both Defendants

18.     Plaintiff TECH USA hereby incorporates paragraphs 1-17 as if each were fully set forth herein.

19.     As recited in paragraph 1 of the Employment Agreement, in addition to TECH USA's Confidential Information, Defendant Mr. Cassidy received from Plaintiff in the course of his TECH USA employment Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act) (the "Act"), Md. Comm. Law Code Ann. §11-1201(e).

20.     As detailed above, these trade secrets were numerous and valuable.

21.     Mr. Cassidy has misappropriated and is using for his own purposes Trade Secrets of TECH USA.   He has unlawfully disclosed them to Defendant NSG, which has knowingly misappropriated them.

22.     Defendant Mr. Cassidy has also misappropriated TECH USA's Trade Secrets pertaining to one customer and, on his own behalf and on behalf of Defendant NSG, has unlawfully disclosed them to another TECH USA customer in an effort to steal that customer's business from TECH USA.

23.     Defendants Mr. Cassidy's and NSG's misappropriating TECH USA's Trade Secrets and exploiting them unlawfully have been willful and malicious.

24.     Plaintiff has suffered damage and irreparable harm, and unless such misappropriation is enjoined, will continue to suffer damage and irreparable harm as a result of Defendants Mr. Cassidy's and NSG's unlawful misappropriation of Plaintiff's Trade Secrets. The harm cannot be fully recompensed in monetary damages, and is irreparable.

WHEREFORE, Plaintiff prays judgment as follows:

(a)     Entry of a Preliminary and Permanent Injunction under Federal Rule of Civil Procedure 65 against Defendants Mr. Cassidy, NSG and their agents, servants and/or

employees, and all those acting in concert with any of them, enjoining them pursuant to § 1202 of the Act from further misappropriation, use, and/or disclosure of TECH USA's Trade Secrets for their own benefit and from otherwise violating the Act.

(b)     Entry of a judgment jointly and severally against both Defendants pursuant to § 1203 of the Act for damages for Defendants' violations of the Act up to the date of an injunction, in an amount not less than Five Hundred Thousand Dollars ($500,000), and for exemplary damages in an amount not exceeding twice any damages award made under § 1203(a), and for attorney fees under § 1203, because Defendants Mr. Cassidy and NSG have engaged in willful and malicious misappropriation.

### COUNT II

### Breach of Contract (Confidential Information) – Defendant Mr. Cassidy

25.     Plaintiff TECH USA hereby incorporates paragraphs 1-24 as if each were fully set forth herein.

26.     Defendant Mr. Cassidy has, in addition to TECH USA's Trade Secrets, also revealed and reviewed with Defendant NSG, as well as to one of TECH USA's customers the names, pricing margins/multipliers/tolerances and other information on TECH USA's customers, which, in addition to being Trade Secrets, also constitutes "Confidential Information" under the Employment Agreement Mr. Cassidy signed with TECH USA.

27.     The names, pricing margins/multipliers/tolerances and other information on Plaintiff's customers that Defendant Mr. Cassidy has revealed to Defendant NSG, as well as to one of TECH USA's customers, constitute "Confidential Information" (as defined in Defendant Mr. Cassidy's Employment Agreement with TECH USA) and also constitute "Trade Secrets" (as

defined under Maryland law).  Such disclosure by Defendant Mr. Cassidy of Confidential

Information for his own benefit (or for the benefit of a third party, including, without limitation,

Defendant NSG) was in clear violation of the Employment Agreement the Defendant Mr.

Cassidy had entered into with Plaintiff.

28.     Any and all use of TECH USA's Confidential Information (as detailed above) by

the Defendant Mr. Cassidy for his own benefit (or for the benefit of a third party, including,

without limitation, Defendant NSG and a TECH USA customer) and/or merely the disclosure or

divulging of Plaintiff's Confidential Information to any such third party constitute acts in

violation of paragraph 1 of the Employment Agreement(s) between Defendant Mr. Cassidy and

Plaintiff.

29.     Those acts described above by Defendant Mr. Cassidy in violation of the

Confidential Information provisions of his Employment Agreement with TECH USA have

caused, and, unless enjoined, will continue to cause damage and irreparable harm to Plaintiff

TECH USA.  The harm cannot be fully compensated in monetary damages.

        WHEREFORE, Plaintiff prays judgment against Defendant Mr. Cassidy as

    follows:

        (a)     Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule

of Civil Procedure 65, and paragraph 1 (Confidential Information provisions) of his Employment

Agreement he signed with Plaintiff, enjoining the Defendant Mr. Cassidy, his agents, servants,

and employees, and all those acting in concert with them, from violating the Confidentiality

provisions of such Agreement.

        (b)     Entry of an Order requiring an accounting by Defendant Mr. Cassidy to

TECH USA of his sales, revenues, and profits as a result of his aforesaid acts in violation of

Employment Agreement paragraph 1, and awarding damages to Plaintiff for his illegal conduct up to the entry of an injunction in the amount of not less than Five Hundred Thousand Dollars ($500,000)..

        (c)      Entry of a judgment against Defendant Mr. Cassidy for TECH USA's costs and expenses, including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Employment Agreement between Plaintiff and Defendant Mr. Cassidy.

**COUNT III**

**<u>Tortious Interference with the Contract between Defendant Mr. Cassidy and Plaintiff TECH USA – Defendant Nucleus Solutions Group, LLC</u>**

30.     Plaintiff hereby incorporates paragraphs 1-29 as if each were fully set forth herein.

31.     Plaintiff has established contractual and other advantageous business relationships with its current and former sales and recruiting employees including, without limitation, with Defendant Mr. Cassidy.

32.     Defendant NSG knew of Plaintiff's contractual and other advantageous business relationships with such sales and recruiting employees including, without limitation, with Defendant Mr. Cassidy.  Defendant NSG's LLC managers are and were at all times complained of in this action Defendant Mr. Cassidy and Mr. Beck, who was the president of Plaintiff from 2005-2012.

33.     Despite knowledge of Plaintiff's contractual and other advantageous business relationships with such sales and recruiting employees (including, without limitation, Defendant Mr. Cassidy).  Defendant NSG, on information and belief,  intentionally, improperly, tortiously and maliciously for its benefit interfered with Plaintiff's contractual relations with Defendant Mr.

16

Cassidy by effectively soliciting and encouraging Mr. Cassidy to breach his contractual and legal obligations to Plaintiff including, without limitation, Defendant Mr. Cassidy's obligation in Employment Agreement Section 1 to preserve the confidentiality of TECH USA's Confidential Information.

34.     Plaintiff has suffered damage and will continue to suffer damage as a result of Defendant NSG's tortious interference.  The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against Defendants NSG as follows:

(a)     Entry of a Preliminary and Permanent Injunction under Federal Rule of Civil Procedure 65 against Defendant NSG and its agents, servants and/or employees, and those acting in concert with them, enjoining them from future tortious interference.

(b)     Entry of an Order requiring an accounting by against Defendant NSG to TECH USA of its sales, revenues, and profits as a result of its aforesaid acts of tortious interference, awarding damages to Plaintiff for Defendant NSG's illegal conduct up to the date of an injunction in the amount of not less than Five Hundred Thousand Dollars ($500,000), and awarding Plaintiff punitive damages from Defendant NSG in the amount of One Million Dollars ($1,000,000).

## COUNT IV

### Tortious Interference with the Contract between Plaintiff TECH USA and one of its Customers – Defendants Mr. Cassidy and Nucleus Solutions Group, LLC

35.     Plaintiff hereby incorporates paragraphs 1-34 as if each were fully set forth herein.

36.     Plaintiff has established contractual and other advantageous business relationships with its customers including, without limitation, the TECH USA customer Defendant Mr. Cassidy emailed on May 27, 2015 at 5:00 p.m. (the "Targeted Customer").

37.     Defendants Mr. Cassidy and NSG knew of Plaintiff's contractual and other advantageous business relationships with its customers including, without limitation, the Targeted Customer.  Defendant NSG's LLC managers are and were at all times complained of in this action Defendant Mr. Cassidy (a recruiting and sales employee of TECH USA from 2007-2013) and Mr. Beck, who had served as the president of Plaintiff from 2005-2012.

38.     Despite knowledge of Plaintiff's contractual and other advantageous business relationships with the Targeted Customer and TECH USA's other customers, Defendants Mr. Cassidy and NSG  intentionally, improperly, tortiously and maliciously for their own benefit interfered with Plaintiff's contractual relations with the Targeted Customer by unlawfully disclosing to that Targeted Customer the "multiplier" rate agreed to between TECH USA and another of its customers.

39.     Plaintiff has suffered damage and will continue to suffer damage as a result of Defendants Mr. Cassidy's and NSG's tortious interference.   The harm cannot be fully recompensed in monetary damage, and is irreparable.

    WHEREFORE, Plaintiff prays judgment against Defendants Mr. Cassidy and NSG as follows:

    (a)     Entry of a Preliminary and Permanent Injunction under Federal Rule of Civil Procedure 65 against Defendants Mr. Cassidy and NSG and the agents, servants and/or employees of either or both of them, and those acting in concert with them, enjoining them from future tortious interference.

(b)    Entry of an Order requiring an accounting by against Defendants Mr. Cassidy and NSG to TECH USA of his/its/their sales, revenues, and profits as a result of their aforesaid acts of tortious interference, awarding damages to Plaintiff for Defendants Mr. Cassidy's and NSG's illegal conduct up to the date of an injunction in the amount of not less than Five Hundred Thousand Dollars ($500,000), and awarding Plaintiff punitive damages from Defendants Mr. Cassidy and NSG in the amount of One Million Dollars ($1,000,000).

Dated: June 4, 2015

_____
Allan P. Hillman
Kern & Hillman, LLC
2911 Dixwell Avenue, Suite 203
Hamden, CT 06518-3915
(203) 782-9076
allan@franchiselawsource.com
U.S. District Court No. 00119

_____
Grover C. Outland III
TECH USA, LLC
8334 Veterans Highway
Second Floor
Millersville, MD 21108
(410) 846-9095
gco@techusa.net
U.S. District Court No. 24064

**Attorneys for Plaintiff**